UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL WOLF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 01-0729 (RJL) |
| | ) |
| CENTRAL INTELLIGENCE | ) |
| AGENCY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(July 30, 2008) [#75, #77, #82, #84]

Plaintiff Paul Wolf ("Wolf" or "plaintiff"), *pro se*, brings this action against the Central Intelligence Agency ("CIA") and Federal Bureau of Investigation ("FBI")[1] pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking records related to Jorge Eliécer Gaitán, a Colombian presidential candidate assassinated on April 9, 1948. Before the Court are plaintiff's motion for partial summary judgment, the CIA's motion for summary judgment, plaintiff's motion to amend his complaint and plaintiff's motion for injunctive relief. Upon consideration of the parties' pleadings, the relevant law and the entire record herein, the Court GRANTS the CIA's motion and DENIES plaintiff's motions.

---

[1] The Court denied the FBI's initial motion for summary judgment on July 14, 2004. *See Wolf v. CIA*, 357 F. Supp. 2d 112, 114 (D.D.C. 2004), *aff'd in part & rev'd in part*, 473 F.3d 370 (D.C. Cir. 2007). Subsequently, plaintiff and Wolf entered into a settlement, which the Court approved on October 14, 2005. *Wolf v CIA*, Civ. No. 01-0729 (D.D.C.) (Order, Oct. 14, 2005).

## BACKGROUND

Since the background of this litigation has previously been described by this Court and our Circuit Court, only those facts relevant to the current issues are presented here. *See Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007); *Wolf v. CIA*, 357 F. Supp. 2d 112 (D.D.C. 2004), *aff'd in part & rev'd in part*, 473 F.3d 370 (D.C. Cir. 2007). This case arises out of Wolf's FOIA request to the CIA to produce "all records about" Jorge Eliécer Gaitán ("Gaitán"). The CIA initially asserted a Glomar[2] response to Wolf's request, stating it could neither confirm nor deny the existence of any records concerning Gaitán. *Wolf*, 473 F.3d at 373. Wolf asserted that these documents were disclosed during the testimony of Admiral R.K. Hillenkoetter ("Hillenkoetter"), then-CIA Director, during the 1948 congressional hearings regarding the unrest situation in Bogotá after Gaitán's assassination. *Id.* Specifically, Hillenkoetter read from official CIA dispatches referencing the riots following Gaitán's assassination during his testimony. *See id.*

Following an unsuccessful administrative appeal, Wolf initiated this suit contending that the CIA had waived any FOIA exemptions due to Hillenkoetter's congressional testimony. *Id.* This Court granted the CIA's initial motion for summary judgment. *Wolf v. CIA*, 357 F. Supp. 2d 112 (D.D.C. 2004). On appeal, the Circuit affirmed this Court's determination that the CIA properly invoked FOIA Exemptions 1 and 3, but reversed on that grounds that the CIA had waived those exemptions as to the

---

[2] A Glomar response allows the CIA to "refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Gardels v CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).

documents acknowledged during Hillenkoetter's congressional testimony. *Wolf*, 473 F.3d at 378. The Circuit Court remanded the case, stating:

> The CIA's official disclosure waiver relates only to the existence or nonexistence of the records about Gaitan disclosed by Hillenkoetter's testimony. As a result, Wolf is entitled to disclosure of that information, namely the existence of CIA records about Gaitan that have been previously disclosed (but not any others). To determine whether the contents—as distinguished from the existence—of the officially acknowledged records may be protected from disclosure by Exemptions 1 and 3 (or both), however, *we remand the case to the district court where the CIA must either disclose any officially acknowledged records or establish both that their contents are exempt from disclosure and that such exemption has not also been waived by the 1948 testimony.*

*Wolf*, 473 F.3d at 380 (emphasis added).

After the Circuit Court's decision, the CIA conducted a search for the documents referenced in Hillenkoetter's testimony. To explain its search efforts, the CIA submitted a declaration by Scott A. Koch, the Chief of the Public Information Programs Division ("PIPD"), Information Management Services, Office of the Chief Information Officer, CIA and Information and Privacy Coordinator. After the Court heard oral argument, the CIA submitted a supplemental declaration by Koch. The declarations explain the general process by which the CIA administers FOIA requests and the specific steps it took here.

FOIA requests are typically directed to the CIA Information and Privacy Coordinator in the PIPD. Koch Decl. ¶ 10. Because CIA records systems are decentralized and compartmentalized, FOIA requests are passed on to the Information Review Office ("IRO") in any directorate and/or component which might possess responsive records. *Id.* ¶¶ 8, 10. Each IRO tasked with a directorate search is responsible for developing an appropriate search strategy, including identifying which

record systems to search and which "search tools, indices, and terms to employ." *Id.* ¶ 10. When all directorates have completed their reviews, PIPD professionals review all of their recommendations concerning exemption, redaction, segregation, and release and provide the ultimate CIA response to the requestor. *Id.* ¶ 15.

Here, PIPD analysts made an initial determination that the records referenced in Hillenkoetter's testimony were likely to be "field reports," and determined it would search the following components for the reports: the National Clandestine Service ("NCS"), the CIA Declassification Center ("CDC"), the Office of the Director of the CIA, the Office of General Counsel, and the Office of Congressional Affairs ("OCA"). *See* Koch Decl. ¶ 24; Koch Supp. Decl. ¶ 12. PIPD also conducted two additional searches for the documents. Koch Supp. Decl. ¶ 12. The search was conducted, in part, by a special unit responsible for handling special searches beyond the requirements of a "reasonable" FOIA search. Koch Decl. ¶ 22.

Ultimately, the CIA identified thirteen field reports referenced in Hillenkoetter's testimony and released two to Wolf. These were located during the CDC's search of its database of records subject to declassification. *Id.* ¶ 27-28. These documents were then referred to the NCS, which redacted information pursuant to FOIA exemptions (b)(1) and (b)(3) before releasing the segregable, non-exempt information to Wolf. *Id.* ¶ 32. Additionally, one of the PIPD's searches of its database of previously released records yielded five additional "intelligence reports" or "information reports" that appear to be based on the field reports identified Hillenkoetter in his testimony. *Id.* ¶ 36. PIPD determined these documents to be non-responsive, because they do not mention Gaitán.

During this search, PIPD also located a State Department document that mentions Gaitán and appears to be based on one of the field reports. *Id.* ¶¶ 36, 37. The CIA referred this document to the State Department for its review and again notified Wolf of its efforts. *Id.* ¶ 37.

The only other location identified by the CIA as possibly containing responsive documents was its historical records stored on microfilm. Records from the CIA's first years of existence, however, were not always retained. *Id.* at ¶ 17. To the extent records were retained, they often were indexed based on broad categories selected by the individual responsible for logging the document. *Id.* This categorization process makes many documents difficult, if not impossible, to locate. The CIA compares locating a single, specific record with an unknown title using this system to searching "for a needle that might or might not be in a haystack." *Id.* at ¶ 19.

The CIA is now moving for summary judgment on the grounds that it met its requirements under FOIA. Wolf, on the other hand, is challenging the adequacy of the CIA's search. The Court held oral argument on the cross motions for summary judgment on February 11, 2008. After oral argument, the CIA submitted a supplemental declaration and Wolf moved to amend his complaint to join the National Archives and Record Administration ("NARA") as a defendant and to add claims challenging the CIA's and NARA's compliance with Federal recordkeeping laws. Wolf also moved for an injunction ordering the CIA to transfer its microfilm records to the NARA for processing of his FOIA request.

## DISCUSSION

### I. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court must draw all reasonable inferences regarding the assertions made in a light favorable to the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The parties' motions for summary judgment focus on the adequacy of the agency's search for the thirteen documents referenced in Hillenkoetter's congressional testimony. Wolf moves for partial summary judgment on the grounds that the CIA's search was inadequate because it failed to search its operational files or microfilm files and it failed to disclose the search terms used or the databases searched.[3] Pl. Opp'n to Def. Mot. for Summ. J. ("Pl. Opp'n") 1-4. In contrast, the CIA moves for summary judgment on the ground that its search was reasonable, and that the further searches plaintiff suggests would be unduly burdensome. CIA Mem. in Supp. of Mot. for Summ. J. 11; CIA Reply

---

[3] In response to Wolf's suggestion that the CIA search the files of the Office of the Director of Central Intelligence, the Office of General Counsel, and the Office of Congressional Liaison, Mem. in Supp. of Pl. Mot. for Partial Summ. J. 5-6, the CIA conducted such a search, yielding no additional responsive documents, Koch Decl. ¶ 39. Despite complying with his request, it appears that Wolf continues to argue that these searches were inadequate because the directorates should have searched beyond the documents maintained in their offices. In addition, he maintains the CIA should search in the "subject file for the Congressional investigation" and the "chron files" for the months of February through May 1948. There is every indication, however, that the CIA did search beyond the offices, including searches of "electronic databases, microfiche records, and a hand-search of boxes and paper records. Koch Decl. ¶ 39.

in Supp. of Summ. J. ("CIA Reply") 1. For the following reasons, I agree with the defendant.

To comply with its FOIA obligations, an agency must show "'that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "The adequacy of an agency's search is measured by a 'standard of reasonableness,' and is 'dependent upon the circumstances of the case.'" *Truitt v. Dep't of State*, 897 F.2d 540, 543 (D.C. Cir. 1990) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). An agency can demonstrate its compliance with FOIA by submitting "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive material (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (agency should submit affidavit that "explain[s] in reasonable detail the scope and method of the search conducted by the agency"). Courts will deem an agency affidavit inadequate if "it fails to describe in any detail what records were searched, by whom, and through what process." *Steinberg*, 23 F.3d at 551-52. The law of this Circuit does not demand that "the affidavits of the responding agency set forth with meticulous documentation the details of an epic search for the requested records. Rather . . . affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance." *Perry*, 684 F.2d at 127.

7

A.   **Search Terms and Databases**

Wolf contends that unless the CIA specifies the search terms used and the components or databases searched, then the Court cannot assess the adequacy of the search. Pl. Opp'n 3-4. While the CIA originally took the position that the Court could determine whether its search was reasonably likely to locate responsive documents without knowing the search terms used or databases searched, CIA Reply 8, it has since disclosed the search terms used by each component, Koch Supp. Decl. ¶¶ 13-18.

In assessing whether an agency's search is reasonably calculated to discover responsive documents, courts have placed particular emphasis on whether the affidavit "identif[ies] the terms searched or explain[s] how the search was conducted." *Oglesby*, 920 F.2d at 68; *see also Russell v. CIA*, No. 95-1234, 1998 U.S. Dist. LEXIS 3014, *6 (D.D.C. Mar. 4, 1998) (finding search adequate when affidavit included descriptions of the conduct of the search and the search terms used); *cf. Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (holding declaration's identification of directorates searched, without explaining the search strategies, identifying search terms or explaining how searches were conducted, was insufficient); *Hall v. CIA*, No. 98-1319, 2000 U.S. Dist. LEXIS 22695, *12-13 (D.D.C. Aug. 10, 2000) ("Without an understanding of the terms used to search the other directorates, the Court cannot evaluate whether those terms were 'reasonably calculated' to recover the responsive records."). Although courts have considered whether an agency identified the databases it searched in assessing the reasonableness of a search, *see, e.g., Kean v. NASA*, 480 F. Supp. 2d 150, 157 (D.D.C. 2007), courts have not required identification of databases to find a search reasonable, *see*

8

*Voinche v. CIA*, No. 98-1883, 2000 U.S. Dist. LEXIS 14291, *10 (Sept. 27, 2000) ("Although a description of precisely what each component within the CIA was asked to search for and the search terms used would have assisted the Court in performing its function, the record is sufficiently detailed to support the grant of summary judgment for defendant.").

The Koch declarations "explain in reasonable detail the scope and method of the search conducted by the agency [sufficient] to demonstrate compliance with the obligations imposed by the FOIA." *Perry*, 684 F.2d at 127. As an initial matter, Koch explained that PIPD analysts made an initial determination that the records referenced in Hillenkoetter's testimony were likely to be field reports, and determined it would search the NCS, the CIA Declassification Center ("CDC"), the Office of the DCIA, the Office of General Counsel, and the Office of Congressional Affairs ("OCA") for the reports. Koch Decl. ¶ 24; Koch Supp. Decl. ¶ 12. PIPD also conducted two additional searches for the documents. Koch Supp. Decl. ¶ 12. The supplemental Koch declaration identified the components searched and provided detailed information regarding the methods by which the CIA conducted its searches within each component. For example, the CIA supplied the search terms used and also noted that it searched for documents containing text similar to Hillenkoetter's testimony and during the time period of the field reports. *Id.* ¶¶ 13-18. While the CIA did not specify the names of the databases it searched, it did specify that it searched the CDC's database for declassified records and the databases of reviewed and released records. Given the exhaustive, detailed description of the methods used to conduct its searches within specific components, the CIA's decision to not

disclose the names of the databases it searched does not render its description of its search inadequate.

### B. Operational Files

Wolf also argues that the Circuit Court's decision required the CIA to search its "operational files," and failing to do so would render the search inadequate. Pl. Opp'n 1. Without conceding that it had an obligation to search its operational files, the CIA conducted a search of the relevant operational files. CIA Reply 3-4; Koch Supp. Decl. ¶ 8.

The CIA Information Act permits the CIA to designate certain files as "operational files" and exempt those files from the FOIA provisions requiring "publication or disclosure, search or review." 50 U.S.C. § 431(a). The CIA has designated certain files within the Directorate of Operations (now NCS), the Directorate for Science and Technology ("DS&T"), and the Office of Personnel Security (now the Office of Security ("OS")) as "operational files." 50 U.S.C. § 431(b).

Contrary to Wolf's contention, the CIA did search its operational files for the field reports. Koch's supplemental declaration makes clear that the CIA searched those operational files it deemed likely to have responsive documents, specifically, the NCS's operational files, "which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services." Koch Supp. Decl. ¶ 8 (citing 50 U.S.C. § 431(b)(1)). Furthermore, the Court has no reason to doubt the CIA's determination that its other operational files were

unlikely to contain responsive documents. Accordingly, plaintiff's challenge to the adequacy of the CIA's searched premise on its alleged failure to search the operational files is moot.

### C. Microfilm

Wolf's main challenge to the adequacy of the CIA's search is that it did not search for records preserved on microfilm. Pl. Opp'n 2-3. The CIA contends that its failure to search microfilm does not render its search unreasonable because such a search would be unduly burdensome and exceed the requirements of FOIA. CIA Reply 5-7. I agree.

An agency's search "must be reasonably calculated to uncover all relevant documents," but the agency need not search every conceivable record system. *Compare Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (finding that the search "must be reasonably calculated to uncover all relevant documents"), *with Oglesby*, 920 F.2d at 68 ("There is no requirement that an agency search every record system."). "[T]he agency bears the burden of establishing that any limitations on the search it undertakes in a particular case comport with its obligation to conduct a reasonably thorough investigation." *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983). Courts are entitled to rely upon an agency affidavit for an explanation of why a further search would be "unduly burdensome" when the affidavit is "relatively detailed, nonconclusory, and not impugned by evidence in the record of bad faith on the part of the agency." *Id.* at 1102; *see Shaw v. U.S. Dep't of State*, 559 F. Supp. 1053, 1058 (D.D.C. 1983) (reasonable for agency to not search microfilm when search would have required an additional three days work by a single researcher). Courts often look for a detailed

11

explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness. *See Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1979) (finding further search unduly burdensome where CIA would need to do a "page-by-page search" through "84,000 cubic feet of documents"); *Nation Magazine v. U.S. Customs Service*, 937 F. Supp. 39, 44 (D.D.C. 1996) (finding search not burdensome when agency only explained that the files were "neither indexed nor cross indexed" and only organized by date).

The declarations submitted by the CIA provide specific details regarding the organization of the microfilm records and establish that searching those records would be unreasonable. As Koch explains, documents from the 1940s were originally stored in paper, organized by broad subject categories. Koch Decl. ¶ 17. The CIA has transferred some of these documents to microfilm reels, which are coded based on the original subject categories. *Id.* ¶ 18. Koch explains that to find a particular field report, a researcher could use the subject index to identify a particular reel of microfilm that may contain the report, but would then have to look at each individual frame to determine whether the reel contained any responsive documents. *Id.* ¶ 19. Armed with only an approximate date and excerpt of the field reports, Koch averred that a researcher would be forced to review the reels on a frame-by-frame basis, which would take approximately 3675 hours and cost about $147,000. Koch Supp. Decl. ¶ 11 & n.7. Even if the CIA undertook such a task, due to the CIA's past record retention practices, it is possible that none of the reports were retained. Koch Decl. ¶ 19. The Court finds that the CIA has met its burden of demonstrating that a search of its microfilm files would be

unreasonably burdensome. *See, e.g., People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 13-14 (D.D.C. 2006) (searching 44,000 files and conducting page-by-page review is unduly burdensome).

The Koch declarations demonstrate that the CIA's search was "reasonably calculated" to find the thirteen field reports. Accordingly, summary judgment in favor of defendant is appropriate.

## II. Discovery

Wolf also wishes to conduct discovery pursuant to Federal Rule of Civil Procedure 56(f) to assist the CIA in its search for responsive documents. The CIA contends that discovery is unwarranted because Wolf has not rebutted the presumption that its affidavits are adequate nor shown that the CIA conducted its search in bad faith. Again, I agree with the defendant.

"Discovery is generally unavailable in FOIA actions." *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) (citing *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000)). Discovery "should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Schrecker v. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *cited with approval by Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Where an agency's declarations are deficient, "courts generally will request that an agency supplement its supporting declarations" rather than order discovery. *Hall*, 2000 U.S. Dist. LEXIS at *19. "Discovery may be appropriate when the plaintiff can raise sufficient question as to the

13

agency's good faith in processing or in its search." *Exp.-Imp. Bank*, 108 F. Supp. 2d at 25 (citing *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2nd Cir. 1994)). However, the presumption of good faith that applies to agency affidavits is not "rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Because Wolf has not provided any evidence that the CIA acted in bad faith, he is not entitled to take discovery. Wolf's belief that "it seems odd that . . . [the CIA does not] have a way to find records of the first congressional investigation of the Agency," without more, is insufficient to order discovery. *See Safecard*, 926 F.2d at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."); *see also Oglesby*, 920 F.2d at 68 n.13 ("[H]ypothetical assertions [that documents must exist] are insufficient to raise a material question of fact with respect to the adequacy of the agency's search."). Indeed, the CIA has even searched additional components based on Wolf's reasoned requests. Koch Decl. ¶¶ 38-39. This belies any finding of bad faith. In addition, the Court fails to find an inference of bad faith associated with the CIA's initial assertion of a Glomar response without searching for potentially responsive documents. Accordingly, the Court concludes that Wolf has failed to rebut the presumption afforded to the CIA's declarations and his request for discovery is denied.

## III. Amended Complaint

During oral argument on the cross motions for summary judgment, Wolf requested, for the first time, that the Court enjoin the CIA to transfer its records on microfilm to the NARA to process his FOIA request. Subsequently, he moved to amend his complaint to join the NARA as a defendant and to add new claims pursuant to the Administrative Procedures Act ("APA") and the Declaratory Judgment Act ("DJA").[4] The premise of his proposed amended complaint is to "determine where the [CIA's historical] records are supposed to be, whether the CIA and NARA are in compliance with the federal recordkeeping laws, and then get the appropriate agency to search for and release the records." The CIA opposes the motion, arguing that amendment would be futile and cause prejudice to the NARA and the CIA by denying them the opportunity to address plaintiff's concerns at the administrative level. The Court need not address these issues, however, because it finds that the proposed amended complaint is so unrelated to the original case that granting leave to amend would inappropriately change the nature and scope of this case.

Once a defendant has answered a complaint, a plaintiff may amend his pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P 15(a)(2). "The court should freely give leave when justice so requires." *Id.* District courts have discretion to grant or deny a motion to amend the complaint. *See Foman v.*

---

[4] Prior to moving to amend his complaint, Wolf filed a motion requesting that this Court enjoin the CIA to transfer its microfilm records to the NARA so the NARA could process his FOIA request. (Dkt. #82.) Under the mistaken belief that he could amend his complaint as of right, Wolf joined the NARA as a defendant and sought judicial review of the agencies' compliance with Federal recordkeeping laws. Shortly thereafter, plaintiff realized he needed to request leave of court to file an amended complaint and obtain his injunctive relief. Because the Court denies plaintiff's motion to amend the complaint, his motion for injunctive relief is denied as moot.

*Davis*, 371 U.S. 178, 182 (1962). Absent any reason, such as undue delay, bad faith or dilatory conduct the movant, failure to cure deficiencies, undue prejudice to the non-moving party, or futility, leave to amend should be freely given. *Id.* "Where, however, the complaint, as amended, would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied." *Miss. Ass'n of Coop. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991); *see also Nat'l Treasury Employees Union v. Helfer*, 53 F.3d 1289, 1295 (D.C. Cir. 1995).

Rule 21 permits courts to entertain motions to add a party. A plaintiff may join additional defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or *arising out of the same transaction, occurrence, or series of transactions or occurrences*; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 21(a)(2) (emphasis added). "Noncompliance with party-joinder rules renders the proposed amendment futile and provides adequate justification for denying the Rule 15(a) motion." *Wilson v. ABN AMRO Mortg. Group*, 2005 WL 3508658, *3 (D.D.C. Dec. 21, 2005)

Wolf brought this case seeking documents relating to Gaitán, and the CIA's search for and production of responsive documents is now complete. The proposed amended complaint, however, seeks to add another FOIA claim based on his request to the NARA for the CIA's accession schedules for its microfilm records and an APA claim seeking review of the CIA's and the NARA's alleged failure to comply with recordkeeping laws, including the Archival Administration Act, 44 U.S.C. § 2101 *et seq.*, the Records

Management by Federal Agencies Act, 44 U.S.C. § 3101 *et seq.*, and the Disposal of Records Act, 44 U.S.C. § 3301 *et seq.* While a FOIA action assesses the sufficiency of the agency's search for documents, the proposed APA claim relates to the agencies' compliance with various recordkeeping laws. Other than potentially increasing the searching capabilities of the CIA's microfilm records (and then possibly uncovering more "field reports"), plaintiff's proposed amendments bear no relationship to his original case and would result in a "radical" change to the "scope and nature" of this litigation. *Cf. Miss. Ass'n of Coop.*, 139 F.R.D. at 544-45 (denying motion to amend FOIA complaint to extent plaintiff sought to add APA and race discrimination claims). For the same reasons, plaintiff's attempt to join the NARA would fail under Rule 21(a)(2)(A). Moreover, plaintiff will not suffer prejudice because he remains free to raise these new claims in a separate lawsuit. Accordingly, Wolf's motion to amend his complaint and join the NARA as a defendant are denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for partial summary judgment and motion to amend the complaint. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge